| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) ) ) **Plaintiff,** ) ) **v.** ) ) ) **JAMES DEWEY MOSER,** ) ) **Defendant.** ) ) | Case No. 09-40086-01-CM |

## **MEMORANDUM AND ORDER**

On June 21, 2010, a jury convicted defendant James Dewey Moser of multiple counts of bankruptcy fraud and one count of conspiracy to commit bankruptcy fraud. This matter is currently before the court on defendant's Motion for Judgment of Acquittal and for the Court to Conditionally Grant a Motion for New Trial (Doc. 81). In his motion, defendant seeks a judgment of acquittal on the grounds that the evidence is insufficient to sustain his convictions and requests that the court conditionally grant him a new trial.

### **I.  Legal Standards**

In reviewing both a motion for new trial and a motion for judgment of acquittal, the court views the evidence in the light most favorable to the government. *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999). The court must uphold the jury's guilty verdict if "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (quoting *United States v. Schlunegar*, 184 F.3d 1154, 1158 (10th Cir. 1999)). "The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United*

*States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (internal quotations omitted). The court considers both direct and circumstantial evidence, as well as reasonable inferences that can be drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993) (citation omitted). An inference is "reasonable" only if "logical and probabilistic reasoning" can lead to the conclusion. *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (citation omitted). The court does not examine the evidence in "bits and pieces," but rather evaluates the sufficiency by "consider[ing] the collective inferences to be drawn from the evidence as a whole." *United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986) (citation omitted).

A court may grant a defendant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. Courts view motions for new trial with disfavor and grant them only with great caution. *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir. 1998). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992). The defendant has the burden of proving the necessity of a new trial. *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000).

**II.     Analysis**

Defendant's convictions are based on his conduct in two bankruptcy cases: a Chapter 7 proceeding filed on April 27, 2005 and a Chapter 13 proceeding filed on April 3, 2007. The indictment alleged that at the time of the filing of the Chapter 7 and Chapter 13 bankruptcy petitions, and throughout the bankruptcy proceedings, defendant intentionally concealed assets from the Chapter 7 and Chapter 13 Trustees. Counts 2–8 and 10 list the specific property that defendant concealed from the trustees:

- an option to purchase real estate located at 12700 W. 151st Street in Olathe, Johnson County, Kansas ("the Property") (Count 2);

- $125,000 in Gold and Silver coins and collectable stamps (Count 2);

- a contract agreement to sublease the stalls on the Property for $3,500 a month, sell the personal property for $5,000, and received a management and consulting fee for $10,000 (Count 3);

- an assignment of his option to purchase the Property in exchange for a reduction of rents amounting to $48,000 (Count 4);

- a "Confidential Settlement Agreement and Release" giving defendant the right to purchase the Property for the return of collateral of gold and silver coins and collectable stamps (Count 5);

- an "Assignment And Assumption Of Right To Purchase Pursuant To Settlement Agreement And Consent Thereto" and "Assignment And Assumption Of Option And Consent Thereto," between Hallmark, Malcolm Knarr, and Miller Enterprises, Inc., whereby Hallmark assigned its right under the "Confidential Settlement Agreement and Release" to purchase the Property to Mr. Knarr, for an undisclosed consideration (Count 6);

- the right to a fifty-percent equity position in the Property, or a commission of up to $450,000 for marketing and sale of the real property (Count 7);

- a "Sublease Agreement" which entitled defendant to a security deposit in the amount of $5,000 (Count 8); and

- gold and silver coins and collectable stamps (Count 10).

To convict defendant on Counts 2–8, the jury had to find that the property listed in the indictment was a part of defendant's bankruptcy estate and that defendant knowingly and fraudulently concealed the property from the trustee. Defendant's main argument for acquittal is that the property he concealed (i.e., the property underlying his convictions) belonged to, or was a business asset of, Hallmark Arabian Farms LLC ("Hallmark"), not defendant. Based on this argument, defendant contends that because the property did not belong to defendant's bankruptcy

estate, he was not required to claim it on his bankruptcy schedules, and thus, he did not fraudulently conceal it from the trustees and could not have had fraudulent intent to conceal it from the trustees.

Defendant's argument that the property was not a part of his bankruptcy estate is flawed. The "bankruptcy estate" includes all property in which the debtor has a legal or equitable interest at the time the bankruptcy case is filed—wherever located and by whomever held. 11 U.S.C. § 541(a)(1). Such property interests are created and defined by state law; however, the court looks to federal bankruptcy law to determine the extent to which the interest is property of the estate. *In re Marshall*, 550 F.3d 1251, 1255 (10th Cir. 2008) (quoting *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002)). "Property" is construed broadly; "an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379 (1966). Property of a bankruptcy estate includes contingent and future interests, whether or not transferable by the debtor. *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d. Cir. 2006). "[T]he mere opportunity to receive an economic benefit in the future is property with value under the Bankruptcy Code." *Id.* (quotations omitted).

Under Kansas law, assets of a limited liability company are not assets of its members, Kan. Stat. Ann. § 17-76,111, but a member of a limited liability company does have an interest in his or her "share of the profits and losses of [the] limited liability company and . . . [the] right to receive distributions of the limited liability company's assets." Kan. Stat. Ann. § 17-7663(h). Additionally, the right to use an item or to control its use is generally a property interest. *In re Marshall*, 550 F.3d at 1255 (using the dominion/control test when considering bankruptcy transfer issues) (citing *J.A. Tobin Constr. Co. v. Holtzman*, 485 P.2d 1276, 1281 (Kan. 1971)).

Based on the evidence presented at trial, a reasonable jury could find that the property listed

-4-

in the indictment was a part of defendant's bankruptcy estate. The Option Agreement, the property set out in Count 2 (Ex. 2-1), states that it is between Miller Enterprises, Inc. and Hallmark or its assigns, but defendant signed it, as an authorized member of Hallmark, on August 1, 2003—Hallmark did not exist until August 28, 2003, when it filed its Articles of Organization with the Kansas Secretary of State. Defendant entered into the Sublease agreement underlying Count 3 (Ex. 3-1) in his individual capacity. The agreement is for the sublease of stalls (referred to as an "Equine Facility") at Hallmark. The Sublease states that the stalls are in the immediate control of Hallmark; that defendant agrees to sublease the Property and to sell the assets at Hallmark; that defendant "holds legal procession [sic] and has secured the option to purchase said real estate from Miller Enterprises;" and that defendant agrees to deliver clear title on the personal assets at Hallmark, which were secured by defendant and his wife. Defendant signed the Sublease as "Seller – James D. Moser," not as a member of Hallmark. Defendant also entered the Agreement underlying Count 7 (Ex. 7-1) in his individual capacity. In that agreement Mr. Knarr agrees to give defendant and his wife a fifty-percent equity position in the Property, once Mr. Knarr acquired the Property under the terms of an agreement he had with Hallmark.

A reasonable jury could infer from these agreements that defendant owned the assets set out in the indictment, had the right to use or control the assets, or, at the very least, had an opportunity to receive an economic benefit from them in the future. Further, defendant's interests in Hallmark were a part of the bankruptcy estate due to the fact that he was a member of the LLC. Kan. Stat. Ann. § 17-7663(h). The evidence presented supports the finding that defendant had an interest in the property listed in Counts 2–8 because his membership interest included a share of the profits of Hallmark and the right to receive distributions of its assets.

Based on the record, the court finds that a rational trier of fact could find that defendant

owned an interest in the property listed in the indictment because he owned it outright, controlled the property, was to receive a future economic benefit from the property, and/or was a member of Hallmark.

It was also reasonable for the jury to find that defendant concealed the assets from the trustees. Concealment is an ongoing offense and occurs when a person prevents the discovery of or withholds knowledge of an asset. *United States v. Arge*, 418 F.2d 721, 724 (10th Cir. 1969). There was ample evidence presented at trial that defendant intended to conceal his interest in or the value of the assets. Defendant was examined under oath on three separate occasions: June 20, 2005 and September 13, 2005 hearings with the Chapter 7 Trustee and a May 9, 2007 hearing with the Chapter 13 trustee. (Exs. 1-4 & 1-4A; 1-5 & 1-5A; and 1-10 & 1-10A.) The transcripts from these meetings support a finding that defendant was not forthcoming about his interest in the assets of Hallmark. The court finds that the evidence presented at trial was sufficient to support the jury's finding that the property was part of defendant's bankruptcy estate, that defendant fraudulently concealed the property from the trustees, and that defendant was guilty of each element of Counts 2–8 beyond a reasonable doubt.

Next, defendant contends that he should be acquitted on Count 10, arguing that he did not have an intent to defraud because the collectable coins and stamps were not a part of the bankruptcy estate. The court disagrees. First, defendant listed a transfer of the collectibles on his Chapter 7 schedule, (Ex. 1-3), but did not indicate that the transfer was merely as collateral. Second, the collectibles were returned to defendant in their original condition while the Chapter 7 bankruptcy was pending (Exs. 5-2, 2-9), but defendant did not disclose their return to the trustee. Third, without explanation, defendant valued the collectibles at $125,0000 in the Chapter 7 matter, but at only $10,000 in the Chapter 13 matter. (Exs. 1-3, 10-6.) Finally, when asked about the collectibles

during the Chapter 13 matter, defendant testified that he had received only some of the collectibles back. (Exs. 1-10 & 1-10A, at 19:00–20:08.) Upon review, the court finds that the record supports the jury's finding.

Defendant also contends that the government failed to establish a conspiracy because "the law forbids only what the defendant did not do. Defendant did not claim in his bankruptcy schedules that he owed [Hallmark] assets." (Doc. 82, at 2.) Again, the court disagrees. The evidence was sufficient to established that defendant committed bankruptcy fraud, as discussed above regarding Counts 2–8 and 10. Based on the evidence presented at trial, a reasonable jury could, and did, find that defendant was guilty of each element of the conspiracy charge, including that he made an agreement to violate the law and that one of the conspirators engaged in an overt act furthering the conspiracy's objective as alleged in Count 1 of the indictment.

After reviewing the record and the parties' arguments, the court finds that there was sufficient evidence to support the jury's verdict on Counts 1, 2–8, and 10 of the indictment. For these reasons the court also finds that defendant is not entitled to a new trial. Defendant's motion is denied.

**IT IS THEREFORE ORDERED** that defendant's Motion for Judgment of Acquittal and for the Court to Conditionally Grant a Motion for New Trial (Doc. 81) is denied.

Dated this 18th day of August 2010, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**